Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 178 | **DATE** | **JUN 21 2001** |
| **CASE TITLE** | Loretta Lee v. Chicago School Reform Board | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Chicago School Reform Board's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached memorandum opinion and order, the defendant's motion for summary judgment [#25] is GRANTED. Plaintiff's motion to strike the Metcalf and Kostopolus Affidavits [#37] is DENIED AS MOOT.
36

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | **JUN 2 2 2001** date docketed | |
| ✓ | Docketing to mail notices. | | | | 38 |
| X | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| mrl (1c) | courtroom deputy's initials | FD-7 FILED FOR DOCKETING 01 JUN 21 PM 5: 06 | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| Loretta Lee | |
| **Plaintiff,** | **No. 00 C 178** |
| **v.** | |
| **Chicago School Reform Board of Trustees,** | **The Hon. David H. Coar** |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

Loretta Lee sued her employer, the Chicago School Reform Board of Trustees, alleging that

the Board discriminated against her on the basis of her race in violation of Title VII of the Civil

Rights Act of 1964, and on the basis of a disability in violation of the Americans with Disabilities

Act.[1] The Board has moved for summary judgment. Because this Court concludes that there are no

genuine issues of material fact and that the Board is entitled to judgment as a matter of law, it

GRANTS the motion.

### Background

Lee began working for the Board in 1979 as a full-time substitute school nurse. Sometime

in 1993, Lee and two other nurses began running the Student Health Services Department at the

Board's Central Office. In the spring of 1994, Lee was promoted to Director of Student Health

Services. From January 1996, through March 17, 1997, while Lee held that position, Charlene Vega

was her immediate supervisor.

On March 10, 1997, Vega became aware that one of the Board's school bus drivers named

Daniel Phillips died that day of meningitis. Vega instructed her staff to go into a crisis intervention

mode. Vega anticipated that the media attention surrounding Phillips' death would cause large

---

[1]     Lee also alleged in one count that the Board violated 42 U.S.C. § 1981, but this Court
has previously dismissed this count.

numbers of people to call the school regarding the possible exposure of students to meningitis. To ensure adequate personnel coverage at each school, Vega set a staff meeting for 7:00 a.m. the following day. That evening, Eleida Gomez, who was in charge of the Board's City Wide Services, called Lee at approximately 8:00 p.m. telling her about Phillips' death. At Vega's direction, Gomez told Lee that nurses would have to be contacted and assigned to Farragut High School and other affected schools to handle the anticipated volume of phone inquiries. Even later that evening – apparently while Lee was sleeping – she received a second call from Gomez. This time, Gomez left Lee a message telling her to report to work at 7:00 the next morning for the staff meeting.

On March 11, 1997, Lee signed in at work at about 9:00 a.m. Shortly after arriving, Lee, Vega, and Gomez met in Vega's office. Vega was angry with Lee because she had arrived two hours later than requested and had not told Vega that she would be late. Vega was apparently angry also because other staff members had to spend time notifying nurses of scheduling changes. At Vega's direction, after the meeting, Lee went to Farragut High School. At some point that day, Lee spoke with Dr. Diaz from the City of Chicago's Department of Public Health. Dr. Diaz told Lee that the form of meningitis that killed Phillips was not highly contagious. Lee relayed this opinion to the Farragut principal and to Vega.

About 3:00 p.m. that afternoon, Lee left Farragut and returned to her office. By 5:00 p.m. that day, Lee had a severe headache. She did not recall telling anyone about the headache. When Lee got home the headache had worsened. According to Lee, it felt like a migraine headache at this point. And, her left arm was somewhat numb.

Notwithstanding Dr. Diaz's opinion, Vega considered the death to have caused a crisis. Vega believed that Lee did not appreciate the seriousness of the panic caused to students' family members by the news of Phillips' death. Because of the continued media attention and the large volume of

calls regarding the potential student exposure to meningitis. Vega decided to send full crisis-intervention teams to the affected schools on March 12, 1997.

Lee woke up March 12, still with a headache. She called her secretary to tell her that she was not feeling well and that she would not be coming to work. Her secretary transferred Lee to one of Vega's secretaries, to whom Lee relayed the same information. Lee didn't report to work on March 12. Lee did not ask to speak to, nor did she actually speak to Vega. That day, Lee called her doctor to schedule an appointment for March 14, the doctor's first available date. With the exception of scheduling a doctor's appointment, the pertinent events of March 13, mirrored those of March 12. Lee spoke with her secretary and Vega's secretary to alert them of her continued headache and to notify them that she would not be in to work. Lee met with Dr. Pitts on March 14, 1997. Dr. Pitts diagnosed Lee as having anxiety, high blood pressure, and "hypertension new onset." With medication, Lee admits that she could currently perform all of the functions of her job.

Vega was disturbed because Lee failed to contact her directly and failed to insure that her job responsibilities were covered in her absence. Vega had to instruct members of her own staff to coordinate Lee's unit with her own. The existence of the meningitis crisis exacerbated Vega's frustration with Lee. Lee did not ever tell Vega that she was bed ridden or that she had a condition that prevented her from contacting Vega personally.

On Friday March 14, 1997, Vega met with her supervisor, Sue Gamm, who was the Chief of Specialized Services. In that meeting, Vega told Gamm that she was dissatisfied with Lee for abandoning her responsibilities as Director of Student Health Services during the meningitis crisis and with her failure to contact Vega directly. Gamm was troubled by Vega's report. As a result of this meeting, Gamm scheduled a meeting with Lee for the following Monday at 9:00 a.m. Gamm had notice of this meeting sent to Lee's house on Saturday, March 15, 1997.

On Monday, instead of meeting with Gamm at 9:00 a.m., Lee again called Vega's secretary. After explaining her medical situation, Vega's secretary transferred Lee to Gamm's secretary who then transferred Lee to Gamm. Lee told her that she had seen a doctor and that her doctor advised her to take several weeks off of work because of her high blood pressure. Gamm asked her for her doctor's phone number so that she could call and verify what Lee had told her. Lee refused to give Gamm her doctor's phone number stating that Gamm had no right to speak to her doctor. Gamm told Lee that as her supervisor, she had a legitimate right to verify what Lee's doctor had told Lee. Lee continued to refuse to provide Dr. Pitts' phone number. According to Lee, she told Gamm that she had a note from her doctor to give to Gamm. Lee also continued to state that she would have to be away from work for two weeks.

Gamm was extremely upset with Lee's refusal to give her Dr. Pitts' phone number. Gamm felt that she could not work with a person who was directly insubordinate to her, especially when that person was the head of a crucial unit in her department. Gamm concluded, after consulting with the human resources department, that it was in the department's best interest to fire Lee. Shortly after Gamm's conversation with Lee, Gamm prepared Lee's termination letter and had it delivered to her house. Lee had apparently filed for a leave of absence that day, but Gamm did not know of this.

## Analysis

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. See Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931

(7th Cir. 1995). The Court will enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial," Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court will address Lee's Title VII claim first and then her ADA claim.

A.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can satisfy her burden of proving intentional discrimination in two ways: (1) through direct evidence of discriminatory intent; or (2) through circumstantial evidence and burden-shifting method articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Pasqua v. Metropolitan Life Ins. Co., 101 F.3d 514, 516 (7th Cir.1996). Lee has not offered any direct evidence of discrimination.

Under the first step of the McDonnell Douglas test, plaintiffs must establish a *prima facie* case. "[B]y establishing these elements . . . the plaintiff shift[s] the burden to the defendant (the second step) to articulate a legitimate, nondiscriminatory reason for its employment action." Jack v. City of Chicago, No. 98 C 8087, 2000 WL 705981 at *2 (N.D. Ill. May 22, 2000). If the defendant articulates such a reason, then the burden shifts back to the plaintiff (step three) to show that the reason is pretextual. See Courtney v. Biosound, Inc., 42 F.3d 414, 418 (7th Cir.1994). The Board apparently does not contest Lee's ability to show a *prima facie* case. In its motion, it instead focuses exclusively on its reason for firing Lee.

A pretext is literally a lie − "a phony reason for some action." Russell v. Acme-Evans, Co., 51 F.3d 64, 68 (7th Cir.1995). To satisfy this element of a discrimination case, a plaintiff may show directly that a discriminatory reason more likely motivated the employer or show indirectly that the

-5-

defendant's asserted reasons are unbelievable, permitting an inference that the real reason was discriminatory. <u>See</u> <u>Essex v. United Parcel Service, Inc.</u>, 111 F.3d 1304, 1310 (7th Cir.1997). In addition to permitting plaintiffs to show that the proffered reason is not the "real reason," courts often also say that pretext can be proven circumstantially by showing either that the defendant's reason had "no basis in fact." <u>Lenoir v. Roll Coater, Inc.</u>, 13 F.3d 1130, 1133 (7th Cir. 1994) (citation omitted). A plaintiff may also show that the reason would be "insufficient to warrant the discharge." <u>Id.</u>

The Board says that Lee was fired because she was absent in the midst of the meningitis crisis and did not contact Vega, her direct supervisor, to explain her condition or to arrange for her work to be completed by other employees. Lee does not contest this, but instead claims that the meningitis "crisis" was not actually a crisis. In effect, Lee questions the basis for Vega's conclusion and her decisions regarding the proper response to Phillips' death. According to Lee, "Vega completely misjudged both the [meningitis] situation and the Plaintiff's medical situation." She does not, however, dispute that Vega honestly believed that there was a crisis. Lee also does not refute Vega's assertion that she did not know the seriousness of Lee's condition. While the decision to fire Lee might not have been the most prudent decision, an employer "needs to supply an honest reason, not necessarily a reasonable one," <u>Flores v. Preferred Technical Group</u>, 182 F.3d 512, 516 (7th Cir. 1999), to defeat a claim for discrimination.[2] Because Lee has not come forth with any evidence that the insubordination that the Board describes was not the real reason or a sufficient reason to fire her, her Title VII claim must fail.

---

[2]     Lee spends an inordinate amount of time arguing that she was not an at-will employee. It is not at all clear what bearing this has on her discrimination suit. But even if Lee is correct, she still has not refuted the fact that Vega honestly believed that Lee was an at-will employee and could be terminated for any reason. While Lee might have a valid breach-of-contract claim, it does not necessarily follow that she has a valid discrimination claim.

## B.

The Americans with Disabilities Act proscribes discrimination against "a qualified individual with a disability because of the disability...in regard to job application procedures, [and] the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). To recover under the ADA, plaintiffs must first show that they are disabled. Id.. Under the ADA, there are three different ways plaintiffs can show that they are disabled. See 42 U.S.C. § 12102(2)(A)-(C). Lee claims only that she has "a physical or mental impairment that substantially limits one or more of [her] major life activities." See 42 U.S.C. § 12102(2)(A). Lee, however, has failed to show that her physical condition – anxiety, high blood pressure, and "hypertension new onset" – substantially limits any of her major life activities as the ADA requires. 42 U.S.C. § 12102(2)(A).

Lee did not say which, if any, of her major life activities were affected by her condition. She has not even attempted to illustrate any limitation on any of the life activities defined by the EEOC regulations. See 29 C.F.R. § 1630.2(i) (1993). She has not offered evidence that her condition limits her ability to: (1) care for herself; (2) perform manual tasks; (3) walk; (4) see; (5) hear; (6) speak; (7) breath; (8) learn; or (9) work. Id. Evidence of a substantial limitation of any of these activities would have been sufficient to show an issue of material fact. Lee has not offered any evidence presumably because she is unable to do so. As a result of this evidentiary deficiency, this Court must conclude that she is not disabled as defined by the ADA. Consequently, her ADA claim must fail.

## Conclusion

For the reasons stated above, this Court GRANTS the Defendants' Motion for Summary Judgment.

Enter:

David H. Coar
United States District Judge

Dated: **JUN 21 2001**